JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Richard Carman ("Carman"), appeals his convictions for aggravated assault and his sentences. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2007, Carman was charged with two counts of felonious assault. The matter proceeded to a jury trial at which the following evidence was adduced.
 {¶ 3} In 2006, Michael Dimaria ("Dimaria") lived on Wentworth Avenue in Cleveland. Carman stayed with his parents in the house next door to Dimaria. One day, Dimaria had his wife's unloaded gun in his pocket and intended to show it to a neighbor. Dimaria testified that Carman approached him holding a baseball bat and a metal lathe. As Carman walked toward him, Dimaria asked about the money Carman owed him for a van Carman had purchased from him. Dimaria testified that Carman, who smelled of alcohol, became upset and raised the baseball bat toward Dimaria. Dimaria punched him, knocking Carman back and causing him to drop the bat and lathe. Dimaria then picked up the bat and lathe, took the gun from his pocket, and gave the items to his wife, who took the weapons inside the house. Dimaria denied ever showing or threatening Carman with the handgun.
 {¶ 4} Carman returned to his parents' house. Dimaria then went over to Carman's house to check on Carman's father because he was in poor health and *Page 2 
Dimaria did not want him to be upset about the incident. Dimaria testified that as he was leaving Carman's house, Carman jumped out from behind the van and struck him in the head with a metal pole, causing a six-inch gash. Carman, who did not testify, called 911 and reported that Dimaria had a weapon. Cleveland police officer James Holt testified that when he arrived, he observed Dimaria bleeding profusely from the head. Holt described Carman as irate and highly intoxicated, with slurred speech and an unsteady walk.
 {¶ 5} Dimaria went to the hospital and received twelve staples to close his head wound. Dimaria's common-law wife, Brenda Hagan, testified and corroborated his story. Hagan further testified that she saw Carman rummage through his van, remove the metal pole, and strike the unsuspecting Dimaria.
 {¶ 6} Defense counsel requested the court to instruct the jury on the lesser included offense of aggravated assault. The jury found Carman not guilty of felonious assault, but guilty of two counts of aggravated assault. The trial court sentenced Carman to eighteen months in prison on each count, to be served concurrently.
 {¶ 7} Carman appeals, raising four assignments of error for our review.
 {¶ 8} In his first assignment of error, Carman argues that the trial court erred in its instruction to the jury on self-defense. Carman claims that if the *Page 3 
court had instructed the jury that he had no duty to retreat from "the conflict" with Dimaria, he would have been acquitted. We disagree.
 {¶ 9} At the request of defense counsel, the trial court instructed the jury on self-defense. Under Ohio law, self-defense is an affirmative defense. State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, affirmed Martin v. Ohio (1987), 480 U.S. 228, 107 S.Ct. 1098,94 L.Ed.2d 267. To establish self-defense, the defendant must show "* * * (1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * *." State v.Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus. If the defendant fails to prove any one of these elements by a preponderance of the evidence, then he has failed to show that he acted in self-defense. State v. Jackson (1986), 22 Ohio St.3d 281, 284,490 N.E.2d 893, 897.
 {¶ 10} The jury instruction in the instant case, which mirrored the instruction found in Section 411.31 of the Ohio Jury Instructions, correctly explained the basic standard. Carman agrees, but argues that there should have been a further instruction that he was under no duty to retreat from his home. *Page 4 
 {¶ 11} In most circumstances, a person may not claim self-defense if he has available a reasonable means of retreat from the confrontation.Jackson at 283-284. Where one is assaulted in his own home, however, a person is privileged to use such means as are necessary to repel the assailant from the house, prevent his forcible entry, or material injury to his home. State v. Peacock (1883), 40 Ohio St. 333, 334. Implicit in this statement of law is the rule that there is no duty to retreat from one's home. State v. Williford (1990), 49 Ohio St.3d 247,551 N.E.2d 1279; Jackson at 284.
 {¶ 12} Carman argues that the trial court should have instructed the jury that he had no duty to retreat since he was on his own property. First, as the State points out, Carman did not object in the trial court to the self-defense instruction. Thus, he has waived all but plain error. Pursuant to Crim. R. 52(B), this court may, in the absence of objection, notice plain errors or defects that affect a defendant's substantial rights. But to rise to the level of plain error, the alleged error must have substantially affected the outcome of the trial.State v. Slagle (1992), 65 Ohio St.3d 597, 604-605, 605 N.E.2d 916.
 {¶ 13} Courts have held that the "no duty to retreat" rule does not apply when the defendant is in his driveway. State v. Marbury, Montgomery App. *Page 5 
No. 19226, 2004-Ohio-1817; State v. Moore (1994), 97 Ohio App.3d 137,646 N.E.2d 470; Cleveland v. Hill (1989), 63 Ohio App.3d 194,578 N.E.2d 509.[1]
 {¶ 14} Dimaria was not in Carman's home at the time Carman struck him with the metal pole. It is unclear whether Dimaria was even on Carman's property. The testimony showed that Carman had left Dimaria's property, returned to his parents' house, obtained a metal pole from his van, and then attacked Dimaria.
 {¶ 15} Thus, we find that the court did not commit plain error by failing to give a jury instruction regarding Carman's having no duty to retreat in defense of his home.
 {¶ 16} Therefore, the first assignment of error is overruled. *Page 6 
 {¶ 17} In the second assignment of error, Carman argues that there is insufficient evidence to support his convictions and his convictions are against the manifest weight of the evidence.
 {¶ 18} We find Carman's argument challenging the sufficiency of the evidence misplaced. In the instant case, there was never a motion for acquittal of the aggravated assault charge based on insufficient evidence. Rather, Carman specifically requested that the court consider aggravated assault as a lesser included offense of felonious assault based on the evidence presented at trial. Moreover, when reviewing a claim by a defendant that evidence supports a claim of self-defense, the manifest weight standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability. State v. Martin, supra; see, also, In re D.P., Cuyahoga App. No. 82151, 2003-Ohio-5821. Accordingly, we will treat this argument as a challenge to the verdict based on the manifest weight of the evidence.
 {¶ 19} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its *Page 7 
way." State v. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541. As the Ohio Supreme Court stated:
 {¶ 20} ""Weight of the evidence concerns the `inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 {¶ 21} The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 22} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude *Page 8 
from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132.
 {¶ 23} Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995),103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.
 {¶ 24} R.C. 2903.12 governs aggravated assault and provides that "no person * * * shall cause serious physical harm to another * * * while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force."
 {¶ 25} Carman argues that his convictions should be reversed because Dimaria was armed with a gun and Carman had no duty to retreat.
 {¶ 26} We find that Carman's argument is misplaced. First, we found under the first assignment of error that the trial court properly instructed the jury on self-defense. Second, even though Dimaria openly admitted he had a gun, the undisputed evidence was that the gun was in his pocket and he never *Page 9 
displayed or brandished it. Moreover, any possible threat or indication that Dimaria possessed the gun would support Carman's claim of self-defense, a claim that the jury obviously did not believe.
 {¶ 27} Dimaria and his wife both testified that Dimaria struck Carman only after Carman raised the baseball bat to strike Dimaria. Although Dimaria admitted he struck Carman more than once, he testified that he struck Carmen multiple times only because the intoxicated man "kept coming at" him. There was no evidence that Dimaria ever displayed the gun or threatened Carman with the weapon. Moreover, Carman attacked Dimaria after the initial altercation had ended.
 {¶ 28} Thus, we conclude that the jury did not lose its way or create such a manifest miscarriage of justice as to require reversal of the convictions.
 {¶ 29} The second assignment of error is overruled.
 {¶ 30} In the third assignment of error, Carman argues that Dimaria's testimony regarding Carman's prior criminal history denied him a fair trial. At trial, the State asked Dimaria to explain why he sold Carman his van. Dimaria testified that Carman had been "busted for a DUI" and needed a van to work out of. It is this isolated statement that Carman now contends deprived him of a fair trial. *Page 10 
 {¶ 31} An appellate court may disregard an assignment of error pursuant to App. R. 12 (A) (2) if an appellant fails to cite any legal authority in support of an argument as required by App. R. 16(A)(7).State v. Armstrong, Cuyahoga App. Nos. 87456 and 87457, 2006-Ohio-5447, citing State v. Martin (July 12, 1999), Warren App. No. CA99-01-003. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673.
 {¶ 32} Carman failed to cite any legal authority in support of his argument, a failure that allows this court to disregard this assigned error. App. R. 12(A)(2); App. R. 16(A)(7). Accordingly, we could decline to review this assignment of error.
 {¶ 33} Moreover, defense counsel did not object to the statement or request a curative instruction. If trial counsel fails to object to the admission of certain evidence or testimony, the objection is waived unless there is plain error in the admission. State v. Tibbs, Cuyahoga App. No. 89723, 2008-Ohio-1258. We find no plain error in this situation because Carman has failed to argue how the exclusion of this isolated statement would have changed the outcome of the case.
 {¶ 34} Therefore, the third assignment of error is overruled.
 {¶ 35} In the fourth assignment of error, Carman argues that he is entitled to the minimum sentence because a greater sentence would violated the Ex Post *Page 11 
Facto and Due Process Clauses of the United States Constitution. Once again, Carman has failed to cite to any legal authority in support of his argument, in accordance with App. R. 12(A)(2) and App. R. 16(A)(7). Moreover, we have previously rejected the argument that a defendant's due process rights are violated with an ex post facto application ofState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. SeeState v. Mallette, Cuyahoga App. No. 87894, 2007-Ohio-715, discretionary appeal not allowed, 115 Ohio St.3d 1439, 2007-Ohio-5567, 875 N.E.2d 101.
 {¶ 36} Therefore, the fourth assignment of error is overruled.
 {¶ 37} Accordingly, judgment is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 12 
It is ordered that a special mandate issue out of this court directing the
common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and MARY JANE BOYLE, J., CONCUR
[1] Courts have, however, found no duty to retreat if the defendant is on the porch steps, Williford, supra; Jackson, supra, or standing on his own doorstep, State v. Reid (1965), 3 Ohio App.2d 215,210 N.E.2d 142. *Page 1